IN THE UNITED STATES DISTRCIT COURT
FOR THE NORTHERN DISTRCIT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HI-TECH PHARMACEUTICALS Inc., | ) | 1:15-cv-01413-SCJ |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PIETER A. COHEN, | ) | |
| CLAYTON BLOSZIES, | ) | |
| CALEB YEE, and ROY GERONA, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OF THE DEFENDANT, PIETER A. COHEN, IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

Now comes the Defendant, Pieter A. Cohen, M.D. ("Dr. Cohen"), and hereby asks this Honorable Court to dismiss the Plaintiff's Complaint and Amended Complaint pursuant to Fed R. Civ. P. 12(b)(2). Dismissal is appropriate because this Court lacks personal jurisdiction over Dr. Cohen, since Dr. Cohen's actions do not fall within the reach of the Georgia long-arm statute. Additionally, the assertion of personal jurisdiction over Dr. Cohen would violate the Due Process Clause of the Fourteenth Amendment both because Dr. Cohen does not have sufficient contacts with the state of Georgia such that he has "purposefully availed" himself of the privilege of conducting activities in the state, and because the

1

964497.1

exercise of personal jurisdiction over Dr. Cohen in this matter does not comport with "traditional notions of fair play and substantial justice."

Dr. Cohen also moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that his statements are a matter of opinion and cannot be the subject of a defamation claim or a claim under the Georgia Uniform Deceptive Trade Practices Act ("UDTPA"). O.C.G.A. § 10-1-372. Further, Dr. Cohen's statements are protected by a qualified privilege pursuant to O.C.G.A. § 51-5-7 and because the statements involve a public figure regarding a matter of public concern. Hi-Tech has failed to state sufficient facts to support a claim of "actual malice" against Dr. Cohen.

Wherefore, Defendant, Pieter A. Cohen, M.D., respectfully requests that this Honorable Court dismiss the plaintiff's claims against him. In the alternative, the Defendant requests a transfer of venue.

## FACTUAL BACKGROUND

In an article published on January 25, 2014 in the Journal of Pharmaceutical and Biomedical Analysis, FDA researchers discussed the link between β-methylphenylamine ("BMPEA"), a synthetic compound originally created in the 1930s as a potential replacement for amphetamine, and current supplements whose ingredients include *Acacia rigidula*, a plant native to parts of Texas. See FDA

2

Article attached hereto as <u>Exhibit 1</u>; <u>see also</u> <u>Drug Testing and Analysis</u> Article attached hereto as <u>Exhibit 2</u>, p. 1.   FDA researchers tested twenty-one dietary supplements that listed *Acacia rigidula* as an ingredient.[1] <u>Exhibit 1</u>, p. 459. Nine of the supplements were found to contain BMPEA, a non-natural compound, for which the FDA "found no safety data on the biological effect . . . on humans." <u>Exhibit 1</u>, p. 457, 465.

Despite its findings that dietary supplements listed as containing *Acacia rigidula* contained a synthetic stimulant with similarities to amphetamine, which is untested in humans, the FDA failed to take action or warn consumers. In an effort to follow up on the FDA findings, Dr. Cohen and the defendants undertook their own analysis. Dr. Cohen and his team tested twenty-one supplements that listed *Acacia rigidula* as an ingredient and were available for sale online. <u>Exhibit 2</u>, p. 2. They found that eleven of the twenty-one supplements contained BMPEA. <u>Id.</u>

On April 7, 2015, Dr. Cohen's findings were published in the journal <u>Drug Testing and Analysis</u>. The article lists all twenty-one supplements tested and the level of BMPEA found in each supplement. <u>Exhibit 2</u>, pp. 2-3. Hi-Tech Pharmaceuticals ("Hi-Tech") is listed as the manufacturer of ten of the twenty-one tested supplements. <u>Id.</u> However, only six of Hi-Tech's supplements were found to

---

[1] *Acacia rigidula* is popular in weight loss and athletic performance supplements.

964497.1

contain BMPEA. Id.  The article notes that the Food Standards Agency in Europe does not permit *Acacia rigidula* to be sold until additional evidence of safety is shown, and that the European Food Standards agency has also cautioned against the consumption of *Acacia rigidula*. Exhibit 2, p. 4. Dr. Cohen called on the FDA to "immediately recall all supplements containing BMPEA" and that it "use all its enforcement powers to eliminate BMPEA as an ingredient in dietary supplements." Exhibit 2, p. 5. Dr. Cohen further warns that "[c]onsumers should be advised to avoid all supplements labelled as containing *Acacia rigidula*." Id.

Dr. Cohen's findings and his subsequent call to action received additional media attention. While Dr. Cohen himself participated in an interview with CBS This Morning, and conducted some additional print interviews, much of the attention he received was from media outlets independently reporting on his findings. Amended Complaint, Exhibit A.

On April 22, 2015, the FDA issued a warning letter to Hi-Tech requesting that it immediately cease distribution of its products that contain BMPEA. See April 22, 2015 Letter attached hereto as Exhibit 3. As grounds for this demand, the FDA explained that "the product labeling asserts that BMPEA is an extract of the botanical *Acacia rigidula*, [the FDA is] aware of no evidence to support an assertion that BMPEA is, in fact, a constituent of this botanical." Exhibit 3. The

4

FDA goes on to note that "BMPEA is not approved as a food additive or prior sanctioned for use in dietary supplements." Exhibit 3.

Hi-Tech now brings a lawsuit against Dr. Cohen for libel, slander, and violations of the UDTPA. Hi-Tech brings these claims, despite the fact that Dr. Cohen's statements about Hi-Tech are only that it is a manufacturer of ten supplements tested in his study, six of which were found to contain BMPEA. These are facts Hi-Tech does not deny. In fact, Hi-tech now concedes in its Amended Complaint that its products contain BMPEA. Amended Complaint, ¶16.

## ARGUMENT

### I.   THE PLAINTIFF'S CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(2) BECAUSE THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DR. COHEN.

Hi-Tech asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1). Amended Complaint, ¶10. "'A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.'" Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F. 3d 1249, 1257-58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). In this case, Dr. Cohen's actions do

964497.1

not fall within the reach of Georgia's long-arm statute. Additionally, asserting personal jurisdiction over Dr. Cohen would violate the Due Process Clause of the Fourteenth Amendment. Accordingly, this Court does not have personal jurisdiction over Dr. Cohen, and the Plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

### A. Dr. Cohen Cannot Be Reached by Georgia's Long-arm Statute.

#### 1. The Georgia long-arm statute does not reach Dr. Cohen because he did not commit a tortious act in Georgia.

The Georgia Supreme Court has held that its long-arm statute must be read literally, and it "imposes independent obligations that the plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." See Diamond, 593 F. 3d at 1259; Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 279 Ga. 672, 674 (2005). Specifically, the Georgia Supreme Court has acknowledged a distinction between a tortious *act* and a tortious *injury*[2] committed in the state.[3] Innovative,

---

[2] The Defendant believes there was no injury to the Plaintiff in any jurisdiction. However, assuming *arguendo* for purposes of this motion, the Defendant's analysis will assume some sort of injury.

[3] The long-arm statute states in pertinent part: "A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator . . . in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2)

279 Ga. at 674. To assert personal jurisdiction under subsection two (2) of the long arm statute, as Hi-Tech does here, the plaintiff must show that the defendant committed a tortious *act* in Georgia.[4] If, however, only an *injury* occurs in Georgia, as the result of a tortious act committed outside the state, the plaintiff must also show that the defendant regularly does business or engages in persistent conduct in Georgia (which Hi-Tech does not assert in its Amended Complaint). O.C.G.A. § 9-10-91. A tort occurs where the actual injury or accident takes place, and not at the place of economic consequences of that injury. Cold Smoke Capital LLC v. Gross, 2012 WL 3612626 *5 (N.D. Ga. 2012) (quoting Atlanta Propeller Serv. Inc. v. Hoffman GMBH & Co., 191 Ga. App. 529, 530 (1989). See also Huggins v. Boyd, 304 Ga. App. 563, 565-66 (2010) (holding that conduct giving rise to offense occurred at the physical place where emails were sent); Anderson v. Deas, 279 Ga. App. 892, 893-94 (2006) (holding that allegedly tortious telephone conduct occurred where the "maker of the call speaks into the telephone.");

---

Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . ." O.C.G.A. § 9-10-91.

[4] Notably, the long-arm statute specifically excludes claims for defamation under subsection two(2). Here, the Plaintiff includes claims for violations of the UDTPA, grounded in allegedly defamatory statements, as an apparent run-around of the long-arm statute.

LABMD, Inc. v. Tiveras, Inc, 509 Fed. Appx. 842, 845-46 (11th Cir. 2013) (unpublished) (upholding that the court had no personal jurisdiction over defendants, including out of state university professor and author of an article regarding the plaintiff, because research regarding the article occurred outside Georgia and a phone call and nine emails to the plaintiff was insufficient to fall under the long-arm statute).

Here, Hi-Tech asserts that Dr. Cohen committed a tortious act in Georgia. Amended Complaint, ¶7.  However, Dr. Cohen's purportedly tortious acts alleged in the Amended Complaint - authoring a scientific article in an academic journal - did not occur in and had no connection to Georgia.[5] Amended Complaint, ¶33. Specifically, Dr. Cohen is a resident of Massachusetts. See Declaration of Pieter A. Cohen attached hereto as Exhibit 4.[6] The research for the article took place in California, and the article was written in Massachusetts. Exhibit 4. Drug Testing and Analysis is an academic journal based in the United Kingdom. Exhibit 4. There are no print subscriptions for the journal Drug Testing and Analysis in

---

[5] Hi-Tech also alleges that Dr. Cohen made defamatory comments during the CBS This Morning interview, although Dr. Cohen did not himself mention Hi-Tech during the interview.

[6] Consideration of affidavits contrary to assertions in the complaint may be considered by the court and shift the burden to plaintiff to produce evidence asserting personal jurisdiction. Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006).

Georgia, and there is only one online subscription in the entire state. <u>See</u> Declaration of Caroline McPhee attached hereto as <u>Exhibit 5</u>. Dr. Cohen denies any tortious conduct. However, to the extent that Hi-Tech alleges there was some kind of tortious act, it did not occur in the state of Georgia.

Moreover, Hi-Tech also alleges that Dr. Cohen is somehow responsible for the content of re-broadcasts or subsequent disseminations of the information contained in his article, even if Dr. Cohen himself was not interviewed or did not personally participate in the media reports.[7] Amended Complaint, Exhibit A. However, there are no facts in the Amended Complaint linking any such purported dissemination activities to Dr. Cohen and Georgia.

In sum, because Dr. Cohen did not commit a tortious act in Georgia, the Georgia long-arm statute does not reach Dr. Cohen. Accordingly, this Court does not have personal jurisdiction over Dr. Cohen, and the claims against him must be dismissed.

### B. Asserting Personal Jurisdiction Over Dr. Cohen Would Violate The Due Process Clause Of The Fourteenth Amendment.

---

[7] For example, Hi-Tech asserts that Dr. Cohen made defamatory comments in a <u>USA Today</u> article and in an article in the <u>New York Times</u> online. Amended Complaint, ¶35. However, these articles merely report on Dr. Cohen's findings as reported in <u>Drug Testing and Analysis</u>. To the extent Dr. Cohen is directly quoted, those quotes make no mention of Hi-Tech. Further, Dr. Cohen was not directly involved in many more of the allegedly defamatory articles listed in the plaintiff's complaint.

9

In order for a court to assert personal jurisdiction over a defendant, not only must the state's long arm statute reach the defendant's conduct (which it does not here), but the assertion of such jurisdiction must also comply with the Due Process Clause of the Fourteenth Amendment, which "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" Licciardello v. Lovelady, 544 F. 3d 1280, 1284 (11th Cir. 2008) (quoting Int'l. Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  In the case of specific jurisdiction, as asserted here,[8] the inquiry into personal jurisdiction focuses on "the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984).  The Due Process Clause allows individuals "fair warning" that particular activity may subject them to jurisdiction in a foreign court. Burger King Corp. v. Rudzewicz, 471 U.S. 562, 472 (1985). A nonresident's "suit related conduct must create a substantial connection" with the state." Ralls Corp. v. Huerfano River Wind, LLC, 27 F. Supp. 3d 1303, 1316 (N.D. Ga. 2014) (quoting Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014)). Further, the connection to the forum state must be

---

[8] A defendant is subject to general jurisdiction only when his contacts with the forum are continuous and systematic "as to render them essentially at home in the forum state." Goodyear v. Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851 (2011). There are no facts in the Plaintiff's Amended Complaint to support a claim of general jurisdiction over Dr. Cohen.

one that the defendant himself makes, and not based on the actions of a third party or the plaintiff. <u>Walden</u>, 134 S.Ct. at 1122; <u>Burger King Corp.</u>, 471 U.S. at 463.

The Eleventh Circuit applies a three part test to determine whether the requirements of the Due Process Clause are met. To assert personal jurisdiction over a defendant, the court must examine:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state laws; and (3) whether the exercise of personal jurisdiction comports with the traditional notions of fair play and substantial justice.

<u>Louis Vuitton Malletier, S.A. v. Mosseri</u>, 736 F.3d 1339, 1355 (2013) (quotations omitted). Here, the Plaintiff cannot meet its burden under the three part test. Accordingly, the Plaintiff's claims must be dismissed.

**1. Dr. Cohen did not have sufficient minimum contacts so as to "purposefully avail" himself of the privilege of conducting activities in Georgia.**

A court in the Eleventh Circuit can apply two tests to determine whether a defendant had sufficient minimum contacts so as to "purposefully avail" himself of the privilege of conducting activities in the forum state. The court may use either (or both) the "effects test" as articulated by the Supreme Court in <u>Calder v. Jones</u>, or the "traditional purposeful availment analysis." <u>Louis Vuitton</u>, 736 F.3d at 1356.

11

Applying either test here, Dr. Cohen did not purposefully avail himself of the privilege of conducting activities in Georgia.

a. Applying the "effects test," Dr. Cohen did not purposefully avail himself of the privilege of conducting activities in Georgia.

Under the Calder effects test, for a tortious act to qualify as purposeful availment, the act must be: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Licciardello, 544 F.3d at 1285-86. A defendant "must have 'expressly aim[ed] his wrongful conduct, individually targeting a known forum resident.'" Gregory v. Mihaylov, 2013 WL 75773, *6 (N.D. Ga. 2013) (quoting Licciardello, 544 F.3d at 1287). Further, a corporation must show "more than that it suffered a financial loss at its principal place of business in Georgia." See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 2009 WL 1035248, *6 (N.D. Ga. 2009).

Here, Dr. Cohen's actions were not aimed at Georgia or Hi-Tech. His article was published in an academic journal based in the United Kingdom and distributed online to only one subscriber in Georgia. Exhibit 4; Exhibit 5. Further, the researchers tested all supplements which met the inclusion criteria, and they did not target Hi-Tech or any other Georgia company. Exhibit 4. Hi-Tech is mentioned

12

only as a manufacturer of some of the supplements that were tested. Exhibit 2. Further, Dr. Cohen's statements do not involve Hi-Tech. Instead, as the Amended Complaint apparently concedes, Dr. Cohen's statements involve *Acacia rigdula* and BMPEA, and not Hi-Tech directly.[9]

Dr. Cohen did not target Hi-Tech with defamatory statements aimed at devastating the company. Cf. Calder, 465 U.S. 783 (1984) (holding that an article was aimed at the forum state when the article "impugned the professionalism of an entertainer" whose career was in the forum state, when the article was drawn from sources in the forum state, and the article was published in a tabloid magazine with the largest circulation in the forum state). Instead, this is a scientific article discussing the FDA and public health concerns regarding certain dietary supplement ingredients. Under the "effects test," Dr. Cohen has not expressly aimed his actions at Hi-Tech or Georgia, and he has not purposefully availed himself of the privilege of conducting activities in the forum state. Accordingly,

---

[9] The Plaintiff's Amended Complaint cites to various allegedly defamatory statements made by Dr. Cohen in his article and to the media. These statements focus on *Acacia rigidula* and BMPEA, and do not mention Hi-Tech. Amended Complaint, ¶¶ 22, 26, 27, 30, 31, 32, 34, 35. On one occasion, Dr. Cohen is asked about a statement made by Hi-Tech, to which he responds (not mentioning Hi-Tech): "FDA's data suggests that the natural compounds found in *Acacia rigidula* are not present in these supplements . . . ." Amended Complaint, ¶¶ 33-34.

964497.1

this Court does not have personal jurisdiction over Dr. Cohen, and the Plaintiff's claims against him must be dismissed.

> b. Applying the traditional purposeful availment analysis, this Court cannot assert personal jurisdiction over Dr. Cohen.

Under the traditional purposeful availment analysis, a court can assert personal jurisdiction over a defendant only if (1) the defendant's contacts are related to the plaintiff's cause of action, (2) the defendant's contacts are sufficient to purposefully avail the defendant of the privilege of conducting activities in the forum, and (3) the defendant's "contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there." U.S. S.E.C. v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997). As discussed in length above, Dr. Cohen's contacts did not purposefully avail him of the privilege of conducting activities in the forum. Additionally, Dr. Cohen's contacts are insufficient to demonstrate that he should have anticipated defending a suit in Georgia.

Dr. Cohen's article involves a scientific study conducted in California about supplements that could be purchased over the internet across the United States. Exhibit 2, p. 2; Exhibit 4. The supplements were not purchased in Georgia. Exhibit 4. Further, all supplements that met the inclusion criteria were tested, regardless of where the manufacturer's principal place of business was situated. Exhibit 4. Dr. Cohen could not possibly have anticipated that the publication of his study, would

14

subject him to possible litigation in Georgia. Accordingly, applying the traditional purposeful availment test, this Court does not have personal jurisdiction over Dr. Cohen, and the claims against him must be dismissed.

> ## 2. Asserting personal jurisdiction over Dr. Cohen does not comport with "traditional notions of fair play and substantial justice."

Even assuming *arguendo* that Dr. Cohen did have sufficient minimum contacts with Georgia, the assertion of personal jurisdiction would still be improper in accordance with the Due Process Clause. In instances where a defendant has sufficient minimum contacts with a forum, those contacts must be evaluated against certain "reasonableness" or "fairness" factors which help protect a "defendant against the burdens of litigating in a distant or inconvenient forum." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Louis Vuitton, 736 F.3d at 1355. Factors a court must consider include: (1) the burden of the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the suit; (3) plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in obtaining the most efficient resolution. World-Wide Volkswagen Corp., 444 U.S. at 292.

In this case, the "fairness factors" indicate that it is unreasonable to force Dr. Cohen to litigate this suit in Georgia. First, the Defendant is a resident of

Massachusetts. He is a full time physician and researcher at Cambridge Health Alliance, and he is also an Assistant Professor of Medicine at Harvard Medical School. Exhibit 4. It would be incredibly burdensome for Dr. Cohen to put his practice, research, and teaching on hold to litigate a claim in Georgia. Further, the article was written in Massachusetts about research conducted in California. Exhibit 4. As a result, no evidence in this case is likely to be in Georgia, and it would be *less* efficient to litigate this case in Georgia than in another forum.

Additionally, Georgia has little interest in adjudicating the suit. While a Georgia corporation alleges harm as the result of Dr. Cohen's article, economic harm alone is insufficient to permit personal jurisdiction over a nonresident. See N. Am. Med. Corp., 2009 WL 1035248 at *6. Further, the crux of the Plaintiff's claims involves claims of defamation, which is specifically excluded from the Georgia long-arm statute, indicating that Georgia is *disinterested* in this litigation. See O.C.G.A. § 9-10-91.[10]

A court cannot assert jurisdiction over a claim when it does not have personal jurisdiction over the defendant. The Due Process Clause requires that a

---

[10] Further Georgia has passed Anti-SLAPP legislation to prevent meritless lawsuits designed to censor and intimidate individuals who express criticism. See O.C.G.A. §9-11-11. While this legislation may be inapplicable in the Georgia federal courts, this legislation demonstrates a general disinterest in allowing litigation such as this to proceed. Massachusetts too has also passed strong Anti-SLAPP legislation. See M.G.L. c. 231 § 59H.

964497.1

defendant have sufficient contact with a forum before he can be haled into court there. Dr. Cohen had no significant contact with Georgia, and his allegedly tortious acts took place outside the state. He does not fall within the reach of Georgia's long-arm statute, and it violates the Fourteenth Amendment to force Dr. Cohen to defend this suit in Georgia. Accordingly, this Court does not have personal jurisdiction over Dr. Cohen, and the Plaintiff's Amended Complaint must be dismissed.

**II.   THE PLAINTIFF'S CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) BECAUSE THE PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT A CLAIM OF LIBEL, SLANDER, AND VIOLATIONS OF THE UDTPA.**

**A. Dr. Cohen's Statements Are A Matter Of Opinion And Cannot Be The Subject Of A Defamation Claim Or A Claim Under The UDTPA.**

Statements of opinion "about which reasonable people might differ . . . are not actionable as defamation." Moulton v. VC3, 2000 WL 33310901, *3 (N.D. Ga. 2000) (citing Kirsch v. Jones, 219 Ga. App. 50, 51 (1996)).  While opinions that imply an assertion of defamatory facts may be subject to a defamation claim, such opinions cannot be defamatory if the facts upon which the opinion is based are disclosed in the underlying communication. Bellemead, LLC, 280 Ga. 635, 638 (2006); Monge v. Madison County Record, Inc., 802 F. Supp. 2d 1327, 1335 (N.D.

Ga. 2011); <u>Hoffman-Pugh v. Ramsey</u>, 193 F. Supp. 2d 1295, 1302 (N.D. Ga. 2002). Stated differently, an author who states their "subjective interpretation of the facts" cannot be subject to defamation claims. <u>Monge</u>, 802 F.Supp. 2d at 1335. For example, a newspaper accusing a lawyer of "bungling a client's case," a newscaster stating that someone "ripped off" his client, and an inspector's statements regarding the quality of a paint job, are opinions and not libelous, so long as underlying facts are disclosed. <u>Kirsch</u>, 210 Ga. App. at 51; <u>Jaillett v. Ga. Television Co.</u>, 238 Ga. App. 885, 890-91 (1999); <u>Davis v. Sherwin-Williams Co.</u>, 242 Ga. App. 907, 989 (2000).

Further, warnings about public safety can be matters of opinion, over which reasonable people can disagree. <u>See</u> <u>e.g.</u>, <u>Moulton</u>, 2000 WL 33310901 *3 (holding that statements indicating that a computer network created security risks were matters of opinion because "[c]omputer security is a subject on which reasonable people could differ."); <u>see</u> <u>also</u> <u>Int'l. Brominated Solvents Ass'n. v. Am. Conference of Governmental Indus.</u>, 625 F. Supp. 2d 1310, 1319 (M.D. Ga. 2008) (holding that proper toxic exposure levels for workplace-safety is a matter of public opinion and contains no misleading representation of fact).

Just as with defamation claims, expressions of opinion are not actionable under the UDTPA, since the UDTPA requires misleading representations of *fact*.

18

964497.1

O.C.G.A. § 10-1-372(a)(8); <u>Moulton</u>, 2000 WL 33310901 at *3; <u>Int'l Brominated</u>

<u>Solvents Ass'n.</u>, 625 F. Supp. 2d at 1319.   A statement that is not defamatory

cannot be grounds for an action under the UDTPA. <u>Moutlton,</u> 2000 WL 3331091

at *3 (citing <u>Dominy v. Shumpert</u>, 235 Ga. App. 500, 506 (1998)).

In this case, Dr. Cohen's article is a matter of scientific opinion and cannot

be the subject of a defamation claim or a claim under the UDTPA. Hi-Tech alleges

that Dr. Cohen was defamatory when he expressed various opinions about his

findings, including but not limited to: "There is not a single weight loss

supplement on the market that is legal and that has been shown to lead to weight

loss in humans;" "[Acacia rigidula is a] new replacement for ephedra . . . but in

fact it does not have that plant in it at all. It has a new, designer stimulant called

BMPEA;" and the FDA should "not wait until we have a body count" before

regulating Acacia rigidula." Amended Complaint, ¶¶ 28, 49.

Dr. Cohen's article clearly lays out the materials and methods regarding his

scientific analysis, including sections on instrumentation, sample acquisition and

preparation, chemical analysis, and data analysis. <u>See</u> <u>Exhibit 2</u>. Only after

explaining his scientific method, and the underlying facts, does Dr. Cohen discuss

his opinion that the FDA should take action to regulate BMPEA. Dr. Cohen's

article is scientific opinion. However, to the extent that Dr. Cohen states any

964497.1

opinion that implies defamatory facts, the facts upon which he bases his opinion are disclosed and, therefore, cannot be the subject of a defamation lawsuit. See Monge, 802 F. Supp. 2d at 1335.

While Hi-Tech may be unhappy with Dr. Cohen's findings and the publicity that he received, it cannot bring a claim of defamation or for violations of the UDTPA for Dr. Cohen's opinion. Accordingly, the Plaintiff's claims should be dismissed, with prejudice, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### B. Dr. Cohen's Was Exercising His First Amendment Right To Free Speech, And His Statements Are Privileged.

#### 1. Dr. Cohen's statements are privileged pursuant to O.C.G.A. § 51-5-7.

Statements made in good faith pursuant to a public duty, legal or moral duty, and statements made "as part of an act in furtherance of the right to free speech or the right to petition government for redress of grievances . . . in connection with an issue of public interest or concern . . . " are provided a qualified privilege under Georgia law. O.C.G.A. § 51-5-7. To make the privilege complete, a defendant must demonstrate good faith, an interest to be upheld, a statement properly limited in scope, a proper occasion, and publication to proper persons. Dominy, 235 Ga. App. At 504 (quoting Shetfall v. Central of Ga. R. Co., 123 Ga. 589 (1905)).

964497.1

Statements regarding public health and safety may be privileged. Id. at 503-04. (holding that one doctor's comments about suspected medical incompetence were privileged); see also Nelson v. Glynn-Brunswick Hosp. Auth., 257 Ga. App. 571, 574-75 (2002) (holding that report by lab technician to hospital administrators regarding doctor's contraction of Hepatitis C was privileged).

Here, Dr. Cohen exercised his First Amendment rights when he urged the FDA to regulate BMPEA in dietary supplements. These statements were made in good faith (as demonstrated by Dr. Cohen's own statements and by the scientific method used), pursuant to his personal and professional duty as a doctor to inform the public of this potentially dangerous substance. Exhibit 4. Further, Dr. Cohen's statements regarding the FDA are petitioning statements directed at the government regarding issues of public concern. Scientific researchers must be able to communicate their findings, free of the threat of litigation, especially when public health and safety is involved. The threat of litigation could result in a chilling effect on scientific research, such that fewer quality investigations are produced for the public. See e.g. Underwager v. Salter, 22 F. 3d 730, 734-35 (7th Cir. 1994) ("Just as the public has a strong interest in providing reporters with a qualified privilege to report on current events without fear of liability for accidental misstatements, so the public has a strong interest in protecting scholars

21

and prosecutors."); see also Humane Soc'y. of the U.S. v. Superior Court, 214 Cal. App. 4th 1233, 1263 (2013); Dow Chem. Co. v. Allen, 672 F. 2d 1262, 1276 (7th Cir.) (both cases discussing chilling effect of subpoenas on academic freedom). Georgia understands the critical nature of this speech, which is why it has made statements like Dr. Cohen's privileged pursuant to O.C.G.A. § 51-5-7.

> ## 2. Dr. Cohen's statements are privileged because the statements are a matter of public concern and because Hi-Tech is a limited-purpose public figure.

For defamation claims, the Supreme Court has established more stringent protections for speech regarding public figures and matters of public concern. N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964).  "Speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values, and it is entitled to special protection." Connick v. Myers, 461 U.S. 138, 145 (1983). "Whether . . . speech addresses a matter of public concern must be determined by the content, form, and context of a given statement . . . ." Connick, 461 U.S. at 147-48. Additionally, if a plaintiff is a public figure (even if the issue is not one of public concern) then he must show that the defendant acted with "actual malice." Curtis Pub. Co. v. Butts, 388 U.S. 130, 164 (1967). In some instances, an individual may become a public figure for a limited purpose if an individual "voluntarily injects himself or is drawn into a particular public controversy and

thereby becomes a public figure for a limited range of issues." Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974). "To determine whether an individual is a limited public figure under Georgia law, 'a court must isolate the public controversy, examine the plaintiff's involvement in the controversy, and determine whether the alleged defamation was germane to the plaintiff's participation in the controversy.'" Bennett v. Hendrix, 426 F. App'x 864, 866 (11th Cir. 2011) (unpublished) (quoting Mathis v. Cannon, 276 Ga. 16, 24 (2002)). Speech that addresses a matter of public concern involving a public figure will be provided the utmost protection. Phila. Newspapers, Inc. v. Hepps, 475 U.S. 767, 775 (1986).

Dr. Cohen's scientific research and statements regarding the safety and efficacy of dietary supplements is of the greatest concern. See United Med. Labs, Inc. v. Columbia Broad Sys., Inc. 404 F.2d 706, 711 (9th Cir. 1968) (holding that TV broadcasts concerning inaccuracies in some clinical studies associated with potential health risks were "of such inherent public concern and stake that there could be no possible question as to the applicability of the New York Times standard for any defeasance"). Further, Hi-Tech is a public figure relating to the presence of BMPEA in its own products. By its own admission, Hi-Tech has an "international reputation" in the dietary supplement industry" and sells millions of doses of dietary supplements containing *Acacia rigidula*. Amended Complaint,

23

¶¶1, 21. Further, Hi-Tech has itself invested "large sums of money on double-blind, placebo-controlled clinical trial of its products to ensure their safety and efficacy." Amended Complaint, ¶20. Certainly, Hi-Tech is public figure, at least to the extent that statements relate to the safety and efficacy of its products. Because Dr. Cohen's statements relate to issues of public concern, about a public figure, his statements are privileged.

### 3.   The Plaintiff has failed to plead sufficient facts to show actual malice.

In defamation claims protected by privilege, a plaintiff must show actual malice to proceed with its claim. See N.Y. Times Co., 376 U.S. at 279-80; Curtis Pub. Co., 388 U.S. at 164. To show actual malice, a plaintiff must show actual knowledge of the statement's falsity or a "reckless disregard" for the truth. N.Y. Times Co., 376 U.S. at 280. A privilege will not protect a defendant's statements if they were made "willfully, corruptly, or maliciously." McKinnon v. Trivett, 136 Ga. App. 59, 62 (1975). Conclusory allegations of actual malice will not remove the privilege. Land v. Delta Airlines, Inc., 147 Ga. App. 738, 739 (1978); Bell Atlantic Corp. v. Twombly, 550, U.S. 544, 555 (2007). Here, Hi-Tech asserts that Dr. Cohen demonstrated "reckless disregard for the truth." Amended Complaint, ¶¶60, 61, 81, 82. However, these accusations are unsupported by the facts in the Plaintiff's Complaint or Amended Complaint, which fail to demonstrate that Dr.

24

Cohen's actions were willful, corrupt, or malicious. In fact, Dr. Cohen acted in good faith, abided by the scientific standards required of academic articles, and followed the precise methodology as outlined in his article. Exhibit 4; Exhibit 2.

Dr. Cohen's statements are privileged by statute and by common law, Further, a statement that is not defamatory cannot be the grounds for a violation of UDTPA. See Moulton, 2000 WL 33310901 at *3. Because Dr. Cohen's statements are privileged, and because the Plaintiff has failed to plead sufficient facts to show that Dr. Cohen acted with actual malice, the Plaintiff's claims must be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## III.   IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO CALIFORNIA OR MASSACHUSETTS PURSUANT TO 28 U.S.C. §1404(a).

The venue in this matter is improper, and the case should be dismissed or transferred pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). Transfer is appropriate when the consideration of certain factors outweigh the plaintiff's initial choice of forum. Robinson v. Giamarto & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). Factors to consider include: the convenience of the parties; the convenience of the witnesses; and the

"interests of justice." 28 U.S.C. §1404(a); <u>England v. ITT Thompson Indus., Inc.</u>, 856 F.2d 1518, 1520 (11th Cir. 1989). As discussed in depth above (<u>supra</u>, pp. 15-16), various factors indicate that Georgia is an improper venue for this litigation. As a result, transfer of venue to the location of either where the research was performed or where the article was written is appropriate. Therefore, in the alternative, the defendant moves for transfer to the U.S. District Court for the Northern District of California or to the District of Massachusetts.

## **CONCLUSION**

For the reasons states above, the Defendant, Pieter A. Cohen, M.D., respectfully requests that the Court dismiss the Plaintiff's Amended Complaint.

Respectfully Submitted,
The Defendant,
By his Attorneys


/s/ Rebecca A. Cobbs
Brian H. Sullivan (PHV)
MA Bar No. 629236
Rebecca A. Cobbs (PHV)
MA Bar No. 687415
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108
(t) 617-523-6010
(f) 617-227-0927

26

bsullivan@sloanewalsh.com
rcobbs@sloanewalsh.com


/s/ Thomas E. Lavender III
Thomas E. Lavender III
Ga. Bar No. 439389
Andrew J. King
Ga. Bar No. 926908
LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
1180 Peachtree Street, Suite 2900
Atlanta, Georgia 30309
(t) 404-418-7170
(f) 404-467-8845
ted.lavender@lewisbrisbois.com
andrew.king@lewisbrisbois.com


DATED:     September 18, 2015


Pursuant to Local Rule 7.1(D), the above-signed counsel certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1B.

964497.1