## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HI-TECH PHARMACEUTICALS INC.,    :

       Plaintiff,              :

                     :

       v.                 :    CIVIL ACTION FILE

                     :    NO. 1:15-CV-1413-SCJ

PIETER A. COHEN, CLAYTON BLOSZIES,  :

CALEB YEE, and ROY GERONA,        :

                     :

       Defendants.         :

## ORDER

This matter is before the Court on Defendant Cohen's motion to dismiss [8] and Defendant Cohen's motion to stay certain pretrial deadlines regarding discovery [13].

## I.    Background

### A.    Procedural History and Facts Alleged in Complaint

On April 28, 2015, Plaintiff, Hi-Tech Pharmaceuticals Inc., filed suit against Defendants, Pieter A. Cohen, Clayton Bloszies, Caleb Yee, and Roy Gerona, alleging state law causes of action under Georgia's Uniform Deceptive Trade Practices Act, as well as libel and slander.  See Doc. No. [1].  Plaintiff filed an amended complaint

AO 72A
(Rev.8/82)

on September 1, 2015.  See Doc. No. [7].  The docket reflects that only Defendant

Cohen has been served with Plaintiff's complaint.  See Doc. No. [6].[1]

Hi-Tech manufactures and markets dietary supplements.  See First Am.

Cmplt., ¶ 1.  Defendant Pieter Cohen is a general internist at Cambridge Health

Alliance and an assistant professor of medicine at Harvard Medical School.  Id., ¶ 2.

Plaintiff contends that Defendant published false and malicious statements about

the safety and efficacy of dietary supplements containing Acacia rigidula that are

manufactured by Hi-Tech and other companies.  Id., ¶ 6.  Plaintiff asserts that the

false statements made by Defendant Cohen "conveyed to the average listener or

reader, and the FDA the overall net impression that Hi-Tech illegally manufactures

and  sells  products  with  a  synthetic  amphetamine  isomer  known  as  ß-

---

[1]The Court notes that Plaintiff's claims of jurisdiction are a bit puzzling.  In its complaint, Plaintiff contends it has "original jurisdiction" based on Georgia's Long Arm Statute. See First Am. Cmplt., ¶ 7.  This is not a correct statement of the law.  "Original jurisdiction" is a term of subject matter jurisdiction associated with 28 U.S.C. § 1331 and generally referring to claims raised under federal law while Georgia's Long Arm Statute is the means by which a court located in Georgia may exercise personal jurisdiction over a nonresident defendant.

Plaintiff then asserts that the Court has "supplemental jurisdiction" over Plaintiff's state law claims that are "substantially related to those causes of action over which the Court has original jurisdiction." Id., ¶ 9.  Plaintiff, however, has not plead any claims over which the Court has original jurisdiction.  The Court cannot exercise "supplemental jurisdiction" when it does not have "original jurisdiction."

Finally, however, Plaintiff alleges that the Court has diversity jurisdiction.  Id., ¶ 10.  The Court finds that this is the proper basis for the subject-matter jurisdiction of Plaintiff's complaint as Plaintiff is a Georgia corporation and Defendant Cohen is a resident of Massachusetts. Id., ¶¶ 1-2.

2

methylphenylethylamine ("BMPEA") while falsely labeling the ingredient as Acacia rigidula." Id., ¶ 12.

According to Plaintiff, Acacia rigidula is a species of shrub or tree in the legume family which grows natively from Texas into Mexico. Id., ¶ 15. The plant has been used by Native Americans for traditional medicine. Id. Plaintiff claims that Acacia rigidula contains 40 different chemical compounds that promote weight loss and energy. One of those compounds is "naturally-occurring" ß-methylphenylethylamine ("BMPEA"). Id.

Hi-Tech alleges that through a proprietary process, it has been able to produce an extract of the Acacia rigidula plant which contains BMPEA as well as other products. Id., ¶ 16. Hi-Tech manufactures products using the Acacia extract and also sells Acacia rigidula as a raw material. Id. The Acacia rigidula extract has been lab-tested and accepted for import by the FDA and U.S. Customs for use in dietary supplements since 2004. Id., ¶ 18.

On April 7, 2014, Defendants published an article entitled "An amphetamine isomer whose efficacy and safety in humans has never been studied, ß-methylphenylethylamine ("BMPEA"), is found in multiple dietary supplements," in the journal "Drug Testing and Analysis." Id., ¶ 22. The article attached a list of products tested by Defendants, including some that were manufactured by Hi-

Tech. Id. The article leaves the average reader with the impression that Plaintiff's products containing Acacia rigidula are "knowingly adulterated, misbranded, mislabeled, and dangerous to consumers." Id., 23.

"Upon information and belief," one or more of Defendants promoted the article to various broadcast, print and news outlets. Id., ¶ 24. As a result, Defendants were granted interviews with various news outlets in which they provided additional defamatory comments and statements critical of the FDA and Hi-Tech. Id., ¶ 25 & Ex. A (listing of internet sites containing interviews or reports of Defendants' comments). Plaintiff cites a number of specific comments Defendant Cohen makes about Acacia rigidula, such as "BMPEA has not been tested in humans, but led to increased blood pressure in cats and dogs. These are things that are signals that in humans will later turn into heart attacks, strokes, and maybe even sudden death." and "We took a look at a new replacement for ephedra the name for this is Acacia rigidula, but in fact, it does not have that plant in it at all. It has new designer stimulant called BMPEA." Id., ¶¶ 26-27; see also id., ¶ 28-35. "Because Defendants did not review the existing scientific literature and did not conduct their testing with reliable scientific protocols, their testing for BMPEA in Plaintiff's products does not form a reliable basis for their allegations of adulteration or contamination." Id., ¶ 36.

4

Plaintiff alleges that Defendants' public communications violate Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-372, et seq. because Defendants have disparaged Plaintiff and Plaintiff's products.  Id., ¶¶ 39-44. Plaintiff states it received a warning letter from the FDA on April 22, 2015, requiring that Hi-Tech cease using Acacia rigidula in its products.  Plaintiff contends it has lost substantial sales and goodwill and suffered a diminishment of its reputation. Id., ¶ 44.  Plaintiff also raises claims of libel and slander based on specific comments made by Defendants.  Id., ¶¶ 45-85.

In conjunction with his motion to dismiss, Defendant Cohen submitted an affidavit in which he testified that he is a resident of Massachusetts. See Cohen Aff., ¶ 1.  He further states that he has never been a resident of Georgia, owns no real estate in Georgia, has never paid taxes in Georgia, and has not been employed in Georgia.  Id., ¶ 3.  The scientific testing for the article in question was performed in California and written primarily in Massachusetts.  Id., ¶ 5.  No part of the research or writing of the article occurred in Georgia.  Id.  The supplement samples tested for the article were purchased online and the computer used to purchase the samples was not located in Georgia.  Id., ¶ 6.  The journal "Drug Testing and Analysis" is based in the United Kingdom.  Id., ¶ 7.

Caroline McPhee, the Legal Director of John Wiley & Sons Limited in the United Kingdom, also provided an affidavit in which she testifies that no print subscriptions for the journal "Drug Testing and Analysis" are distributed in the state of Georgia. See McPhee Aff., ¶¶ 1-2. She also states that there is only one subscription to the online edition of the journal in Georgia. Id., ¶ 3.

**B.    Contentions**

Defendant Cohen argues that the court lacks personal jurisdiction over him because his actions do not come within Georgia's Long-Arm Statute and because the exercise of personal jurisdiction under these circumstances would violate the Due Process Clause of the Fourteenth Amendment given that Defendant Cohen does not have sufficient contacts with the state of Georgia to show that he has purposefully availed himself of the state and jurisdiction would not comport with traditional notions of fair play and substantial justice.   Defendant Cohen also contends that his statements cannot form the basis of a claim under Georgia's Uniform Deceptive Trade Practices Act or defamation because they are matters of opinion and are protected by a qualified privilege under O.C.G.A. § 51-5-7.   He further notes that the statements involve a public figure regarding a matter of public concern and Hi-Tech has failed to allege sufficient facts to support the element of "actual malice" required under such circumstances.

6

AO 72A
(Rev.8/82)

Plaintiff responds that the Court can exercise specific personal jurisdiction over Defendant under Georgia's Long Arm Statute because Defendant committed a tortious act or omission within Georgia when he disparaged Plaintiff's products by means of a false or misleading representation of fact in violation of Georgia's Uniform Deceptive Trade Practices Act. Plaintiff asserts that the violation of the Act occurred when the article was published in Georgia and when Defendant made public comments concerning the article that were disseminated throughout the State of Georgia. Plaintiff also argues that the exercise of personal jurisdiction comports with Due Process because Plaintiff's claims arise out of Defendant's contacts with Georgia, Defendant purposefully availed himself of conducting activities in Georgia, and Defendant has not offered any reason why the exercise of jurisdiction would offend traditional notions of fair play and substantial justice.[2]

## II.    Discussion

A federal court must have both statutory and constitutional authority to assert jurisdiction over a defendant. See McGee v. International Life Ins. Co., 355 U.S. 220 (1957). "A federal court sitting in diversity undertakes a two-step inquiry

---

[2]Plaintiff takes a pass at requesting jurisdictional discovery in its response to Defendant's motion to dismiss. See Doc. No. [12], p. 8 n.1. However, Plaintiff does not provide any basis for such jurisdictional discovery or explain how such discovery would be relevant to whether the Court can exercise personal jurisdiction over Defendant Cohen under these circumstances.

7

in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir.2009)). The plaintiff bears the initial burden of pleading sufficient facts to establish a prima facie case of personal jurisdiction over a nonresident defendant. Id. The burden then shifts to the defendant to make an evidentiary showing, by affidavits or otherwise, that personal jurisdiction does not exist. See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). After the defendant has come forward with such evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [the defendant's] affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." See id. (citing Posner v. Essex Ins. Co., 178 F.3d 1209, 1215 (11th Cir.1999)). However, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." S & Davis Int'l, Inc. v. The Republic of Yemen, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam)). Furthermore, if "the plaintiff's complaint and supporting evidence conflict with the defendant's

8

affidavits, the court must construe all reasonable inferences in favor of the plaintiff." <u>Diamond Crystal</u>, 593 F.3d at 1257 (quoting <u>Meier</u>, 288 F.3d. at 1269).

The Court must first consider whether the provisions of Georgia's long-arm statute confer personal jurisdiction over Defendant Cohen. <u>Id.</u> In relevant part, Georgia's long-arm statute provides that:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> . . .
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> . . .

<u>See</u> O.C.G.A. § 9-10-91. As the Eleventh Circuit has observed, the statute must be "read literally," and "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of due process." <u>See</u> <u>Diamond Crystal</u>, 593 F.3d at 1259. Furthermore, a district court must "interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court." <u>See</u> <u>id.</u> at 1258.

9

In <u>Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames</u>, 279 Ga. 672, 674, 620 S.E.2d 352, 354 (2005), the Supreme Court of Georgia held that a nonresident "must do certain acts" as delineated by the statute before the nonresident can be subjected to personal jurisdiction in Georgia. <u>Id.</u> (internal citation omitted); <u>see also</u> <u>Anderson v. Deas</u>, 273 Ga. App. 770, 773, 615 S.E.2d 859, 862 (2005) ("The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where, as here, it is shown that no such acts were committed, there is no jurisdiction.").

The Georgia Court of Appeals has explained that under subsection (2) of the Long Arm Statute, "the tortious act occurred either where the allegedly negligent act or omission was made . . . or where the damage was sustained . . . The damage from the allegedly tortious act was not sustained in Georgia simply because the plaintiff . . . is a resident of Georgia. . . . A tort occurs when and where the actual injury or accident takes place, and not at the place of the economic consequences of that injury." <u>See</u> <u>Gee v. Reingold</u>, 259 Ga. App. 894, 897, 578 S.E.2d 575, 579 (2003) (quoting <u>Atlanta Propeller Svc. v. Hoffman GmBH & Co. KG</u>, 191 Ga. App. 529, 530, 382 S.E.2d 109 (1989)).

10

AO 72A
(Rev.8/82)

For example, in Exceptional Marketing Group, Inc. v. Jones, 749 F. Supp. 2d 1352 (N.D. Ga. 2010) (Thrash, T.), when analyzing subsection (2), the court found "without merit" an argument that the defendants were subject to personal jurisdiction because the plaintiff company sustained an injury in Georgia. Id. at 1363-64. Rather, the court found that the solicitation injury occurred in Mexico because that is where the improper solicitation occurred. The misappropriation injury occurred in Massachusetts where one defendant revealed secrets and another took advantage of those secrets for commercial gain. Id. Although the "economic consequences of these injuries manifested in Georgia," neither defendant "committed a tortious act in Georgia sufficient to establish personal jurisdiction over them." Id. The court found the injury distinction important because subsection (3) provides for long-arm reach over nonresident defendants "who commit tortious acts *outside* Georgia causing injury *inside* Georgia." Id. (emphasis in original). But unlike subsection (2), subsection (3) also requires that a nonresident defendant regularly engages in business or some course of conduct in Georgia. As a result, subsection (2) must reach different conduct than subsection (3) or else the additional requirements of subsection (3) could be avoided.

Here, the uncontroverted evidence in the record is that the testing done for the article was conducted in California and the research and writing of the article

11

took place in Massachusetts.  Thus, any tort of disparagement would have potentially occurred in either of those locations and not in Georgia.  Under Georgia law, the fact that Plaintiff claims it has suffered injury from the article in Georgia is not sufficient to establish contact under Georgia's Long Arm Statute.  Similarly, the Georgia Court of Appeals has held that where telephone calls are placed to Georgia from another state and there is no evidence that the defendant ever came to Georgia so as to commit an act in Georgia, "[a]lthough the injurious consequences would have been felt in Georgia, . . . .applying the Long Arm Statute," there is nothing to give rise to personal jurisdiction over a defendant in Georgia courts.  Anderson, 273 Ga. App. at 773, 615 S.E.2d at 862; see also LabMD, Inc. v. Tiversa, Inc., 509 F. App'x 842, 844 (11th Cir. 2013) (citations omitted) ("For purposes of personal jurisdiction under Georgia's long-arm statute, Georgia courts have ruled that—when a defendant uses the telephone or email to contact a Georgia resident—defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email."); Huggins v. Boyd, 304 Ga. App. 563, 565, 697 S.E.2d 253, 255 (2010) ("The conduct giving rise to the offense of stalking in this case occurred at the physical place where [appellant] typed in and sent his e-mails.").

Georgia requires that "an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." See

12

Huggins, 304 Ga. App. at 564-65, 697 S.E.2d at 254 (quoting Gust v. Flint, 257 Ga. 129, 130, 356 S.E.2d 513 (1987)). Plaintiff's complaint does not allege any act taken by Defendant Cohen within the state of Georgia. Any subsequent transmission of Defendant Cohen's article or interviews occurred as a result of third party actions and not any act by Defendant Cohen. As such, the Court concludes that Plaintiff's complaint does not allege any acts which are sufficient to come within subsection (2) of Georgia's Long Arm Statute and the Court cannot exercise personal jurisdiction over Defendant Cohen.

Even if the Court were to determine Defendant's acts satisfied Georgia's Long Arm Statute, the Court would also have to consider whether jurisdiction is appropriate under the Due Process Clause of the Fourteenth Amendment. See Diamond Crystal, 593 F.3d at 1267. As the Eleventh Circuit has observed, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns." See id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985)). At its heart, the due process inquiry thus requires a court to consider whether a defendant "should reasonably anticipate being haled into court" in the forum in question. See Burger King, 471 U.S. at 474 (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

13

The "nature and quality" of the minimum contacts needed for the court to exercise jurisdiction depends on whether specific or general personal jurisdiction is being asserted. Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000). Specific jurisdiction is relevant where the defendant's contacts with the state are associated with the cause of action. Helicopteros Nacionales de Colombia, N.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). General jurisdiction, on the other hand, can be exercised even if the nonresident's contacts are not related to the underlying claim, as long as those contacts are sufficient. Id. at 414 n.9. Plaintiff, here, does not claim that Defendant's contacts with Georgia satisfy general jurisdiction.

In matters of specific-jurisdiction, the Eleventh Circuit has described that the due-process inquiry has three steps:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013). The plaintiff bears the burden of demonstrating the first two prongs, and if the plaintiff does so, the "defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."

14

Id. (quoting Diamond Crystal, 593 F.3d at 1267).  The "inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation." Id. at 1355-56.   Here, for the same reasons as described above, the Court finds that Plaintiff has not alleged any acts taken by Defendant Cohen in the Georgia forum let alone any acts in the forum that are related to Plaintiff's claims.

With respect to whether Defendant "purposefully availed" himself of the forum, the Court may consider the "effects" test or the "purposeful availment" test. Under the "effects" test, a "nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any contacts with the forum state . . . [if] the tort (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Id. at 1356 (citing Calder v. Jones, 465 U.S. 783 (1984)). Under the "purposeful availment" test, the Court must consider whether the nonresident defendant's contacts with the forum were (1) related to the plaintiff's cause of action, (2) "involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Id. at 1357.

15

The Court finds that none of Plaintiff's allegations show that Defendant Cohen either intentionally aimed any conduct toward the Georgia forum or that he purposefully availed himself of the Georgia forum. There are simply no contacts directed at the Georgia forum at all. Plaintiff also has not alleged any facts in the complaint to show that Defendant Cohen would have understood that the publication of the article or any comments he made would have an impact on a Georgia Plaintiff. In fact, the specific statements to which Plaintiff takes umbrage never mention Plaintiff, but rather focus on ß-methylphenylethylamine ("BMPEA"). Plaintiff is mentioned as a manufacturer of certain products that were tested.

Nothing in Plaintiff's allegations would show that Defendant Cohen wrote the article or made any additional statements with the purpose of directing them at Hi-Tech, the Georgia Plaintiff. The allegedly offending article relates only to ß-methylphenylethylamine ("BMPEA") and whether it is a substance that occurs naturally in Acacia rigidula. The article and subsequent interviews say nothing about the Georgia forum. See Revell v. Lidov, 317 F.3d 467, 473-74 (5th Cir. 2002) ("sources relied upon and activities described in an allegedly defamatory publication should in some way connect with the forum if Calder is to be invoked"); Reynolds v. International Amateur Athletic Federation, 23 F.3d 1110 (6th Cir. 1994)

16

(allegedly defamatory press release related to plaintiff's activities in Monaco and not Ohio).[3]

Because the Court finds that Plaintiff has not shown either of the first two prongs, the Court need not consider whether the defendant has shown that the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." For all of these reasons, the Court GRANTS Defendant Cohen's motion to dismiss [8] for lack of personal jurisdiction.

Because the Court finds it cannot exercise personal jurisdiction over Defendant Cohen, the Court does not reach Defendant's Rule 12(b)(6) arguments as to whether Plaintiff has stated a claim under Georgia's Uniform Deceptive Trade Practices Act, libel, or slander. The Court also DENIES AS MOOT Defendant Cohen's motion to stay certain pretrial deadlines regarding discovery [13].

## III.   Conclusion

The Court GRANTS Defendant Cohen's motion to dismiss [8] and DENIES AS MOOT Defendant Cohen's motion to stay certain pretrial deadlines regarding discovery [13].

---

[3]The Court recognizes that Plaintiff necessarily bases its personal jurisdiction argument on its Georgia Uniform Deceptive Trade Practices Act claim because defamation is specifically exempted from subsection (2) of Georgia's Long Arm Statute. But the Court agrees with Defendant's assertion that the aura of Plaintiff's Uniform Deceptive Trade Practices Act claim is certainly one of defamation such that cases like Revell and Reynolds are relevant.

AO 72A
(Rev.8/82)

As the Court stated above, the docket shows only that Defendant Cohen has been served with Plaintiff's complaint.  Plaintiff has not moved for the Clerk of Court to enter default against any of the other Defendants.  As such, the only information before the Court is that no other Defendants have been served.  Given that Plaintiff's complaint was filed in April 2015, the deadline for service of process under Rule 4(m) has passed.  The Court DIRECTS the Clerk of the Court to CLOSE this CASE.

**IT IS SO ORDERED** this _9th_ day of March 2016.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

18